ADKINS, Justice.
This is a petition for writ of certiorari to the Industrial Relations Commission which reversed the compensation order of the Judge of Industrial Claims. The Commission based its reversal on the ground that there was insufficient evidence presented of a work-related injury and that the notice given to the employer was inadequate. We reverse.
Gloria Hester, the claimant-petitioner, is a registered, certified scrub technician in the operating room with nineteen years’ experience. She was employed at Westches-ter General Hospital since its founding in 1966. Prior to that she worked for its predecessor, Coral Gables General Hospital. One of the many duties of a scrub technician is to lift patients from the operating table to the stretcher and vice versa. Although we note that one doctor states that this practice is not done at an “enlightened hospital,” it was a recognized duty at Westchester General Hospital.
Petitioner testified that while lifting a patient from a stretcher to the operating table on November 29, 1967, she felt a “pull” in her back. She further testified that at that time she did not think anything of it. Consequently, she did not make out an injury report. However, she did tell her supervisor, Mrs. Thaysen, about the pull three or four days after the incident. Mrs. Thaysen testified that while she could not recall whether claimant told her of the pull at or near the time of the accident, she would not deny that she may have been told. She did recall that on numerous occasions during claimant’s hospitalization that Mrs. Hester did tell her that she was injured while lifting patients sometime before the Christmas party.
After the accident of November 29, 1967, claimant continued to work full time. The injury did not flare-up until late February or March, 1968, when Mrs. Hester was assisting Dr. Jáy Cohen. She complained to him of numbness in her legs. After listening to the symptoms and testing her reflexes, Dr. Cohen suggested that she see Dr. Morris. She was then placed in the care of Dr. Morris and Dr. Abel. All three doctors worked at respondent hospital.
On April 2, 1968, approximately four months after the incident and on the advice of her doctors, she entered the hospital. A few days later she submitted to a myelogram test. This test apparently is not something one readily consents to. The myelogram proved negative. On April 20, 1968, she was discharged. She re *507 mained away from work until June. She returned to her duties only after a specifically prescribed and constructed back brace was made and fitted. This brace gave her the freedom to work with a minimum of pain. However, she could no longer lift either patients or heavy objects. She continued working until August 13, 1968, when she was fired, ostensibly for insubordination, although she contends that she was fired because she hired an attorney to prosecute this claim.
Dr. Abel’s signed, but undated “History and Physical Examination,” which apparently was prepared at the time of her hospitalization, includes the notation, “Patient states that she has lifted several patients to transfer them from table to stretcher in the o. r. and she thinks that that is the reason for her pain.” At his deposition, taken well after the claimant left the hospital, Dr. Abel stated that he thought Mrs. Hester had told him that she injured herself lifting patients, but could not recall whether she gave a specific date.
Dr. Morris stated that claimant in his medical history said she was injured while dancing at the Christmas party. He also stated that this was the type of injury that could occur as a result of several incidents.
Dr. Berry, who examined Mrs. Hester at the request of the employer/carrier, stated that she had a five per cent permanent disability dating back to November 28, 1967. Dr. Keeley in his report of October 3, 1968, found that the injury occurred on November 28 or 29, 1967, from lifting patients and that her permanent partial physical impairment was equal to five to ten per cent of the body as a whole.
Additional testimony was taken from Sylvia Erlich, the hospital administrator. She said that she first heard that Mrs. Hester was claiming an injury on April 24, 1968, from claimant’s supervisor. She thereupon called claimant and the following conversation took place:
“ ‘When did you hurt yourself ?’ This is her exact quote, she said, ‘Last year sometime. Last Winter, close to Christmas.’
“Well, I said, ‘How did you hurt yourself?’ She said, T do not remember a specific incident. While lifting patients.’ ”
With the one additional fact that no written report of this injury was made until April, 1968, these are substantially all the facts from which the Judge of Industrial Claims made his findings of fact and upon which he based his order. The pertinent portion of this order reads as follows :
“3. I find that, on November 29, 1967, in Dade County, Florida, the claimant, GLORIA HESTER, received an injury by accident arising out of and in the course of her employment with the employer, WESTCHESTER GENERAL HOSPITAL, when claimant, while lifting a patient from a stretcher to a table, felt a pull in the back; that, while the date that the claimant told her supervisor is cloudy and may appear to be late and indefinite, the claimant definitely told the supervisor she had hurt her back lifting a patient — or lifting something; that even if the notice of injury was beyond the statutory limit, the employer was not prejudiced thereby as the employer, WESTCHESTER GENERAL HOSPITAL, treated her initially on the premises.”
We concur in both findings.
The Commission, however, says that there is not sufficient evidence of a work-related injury. From the facts as related above, certainly there is competent, substantial evidence upon which the Judge of Industrial Claims could properly rely, and which comports with reason and logic. See Painter v. Board of Public Instruction of Dade Co., 223 So.2d 33 (Fla.1969).
*508 Fla.Stat. § 440.18, F.S.A., sets out the requirements for notice of injury. Generally speaking, notice of injury must be given within thirty days to the employer/carrier after the date of the injury. However, Fla.Stat. § 440.18(4), F.S.A., provides certain exceptions to the thirty-day limitation. It reads as follows:
“Failure to give such notice shall not bar any claim under this chapter
(a) If the employer (or his agent in charge of the business in the place where the injury occurred) or the carrier had knowledge of the injury or death and the division determines that the employer or carrier has not been prejudiced by failure to give such notice, or
(b) If the commission excuses such failure on the ground that for some satisfactory reason such notice could not be given; nor unless objection to such failure is raised before the division at the first hearing of a claim for compensation in respect of such injury or death. Provided, in case the delay in giving notice is so excused, no compensation shall be payable for aggravation of the injury caused by want of ‘first aid’ or proper medical treatment during such delay, and every presumption .shall be against the validity of the claim.”
The Commission held that claimant did not comply with this statute, in that the “claimant’s report of the incident in the operating room to her supervisor, a co-employee, is not sufficient [notice].” (Emphasis supplied) This finding is based upon a statement taken from Larson’s Workmen’s Compensation Law, Vol. 3, § 78.31 (b), p. 35, that knowledge or notice of the injury to a “mere co-employee is not sufficient.” However, we can not overlook the preceding sentence which states, “Generally, in order that the knowledge be imputed to the employer, the person receiving it must be in some supervisory or representative capacity, such as foreman, supervisor. . ” Larson’s Workmen’s Compensation Law, supra, text p. 33. The Judge of Industrial Claims specifically found, as fact, that Mrs. Hester told her supervisor that she had hurt her back lifting a patient. While we can find no Florida cases holding that notice to a “supervisor” is adequate notice, this Court in Drew v. Wellman-Lord Engineering, Inc., 166 So.2d 136 (Fla.1964), recognized that notice to one’s foreman is sufficient to comply with the notice of injury requirements of Fla.Stat. § 440.-18, F.S.A. We agree with those states holding that notice to a supervisor provides adequate notice to the employer of an injury. The supervisory nature of a supervisor of nurses is very similar to that of a foreman in a construction outfit. No valid distinction between' the two positions for the purposes of this case can be drawn.
Finally, the Judge of Industrial Claims did not concede that notice was, in fact, given beyond the statutory period. His decision was correct. In Escarra v. Winn Dixie Stores, Inc., 131 So.2d 483 (Fla.1961), this Court was faced with a similar problem to the one in the case sub judice. A bag boy in one of the Winn Dixie Stores received a bloody nose from a case of beer. Needless to say, no injury report was made. No one considered the injury to be serious. However, several months later, the boy discovered from a doctor that his breathing difficulties probably stemmed from the bloody nose. He, thereupon filed his compensation claim. This Court spoke directly to the issue of timely notice.
“We hold that the finding of the deputy with regard to the fact that the claimant thought no more about his injury and therefore attached no particular significance to it is sufficient to excuse his failure to comply with the statutory provisions regarding notice of injury. Inasmuch as the injury was apparently slight and caused no immediate disability, neither the claimant nor any reasonable person would have any way of knowing that the type of injury involved here *509 would in the course of time become troublesome and would require medical treatment. This holding is in harmony with the general rule and with our ‘reasonable man’ test regarding the giving of notice.” Escarra v. Winn Dixie Stores, Inc., supra (text p. 485)
What the Judge of Industrial Claims did find was that even if notice was untimely, no prejudice to the employer resulted since the claimant was treated initially at Westchester General Hospital. In Larson’s Workmen’s Compensation Law, there is a clear statement on the subject of prejudice which substantiates the Judge’s finding.
“In many acts there is a general provision that want of timely notice of injury shall not be a defense if it resulted in no prejudice to the employer. The showing of lack of prejudice usually follows the pattern set by the two objectives of the notice statute: first, a showing that claimant’s injury was not aggravated by reason of the employer’s inability to provide early diagnosis and treatment; and second, a showing that the employer was not hampered in making his investigation and preparing his case. . . . Under the second category, prejudice may be ruled out by a showing that, after the delay, the employer had access to the same facts as if earlier notice had been given and would probably have used the same witnesses and evidence, or perhaps that at the time notice was due the employee and employer would have been equally ignorant of the true facts, as when neither knew until much later that the injury would result in disablement.” (Emphasis supplied) Larson’s Workmen’s Compensation Law, Vol. 3, § 78.32, pp. 38-42.
In the case sub judice, the hospital’s own doctors were aware of the nature and extent of the injury almost from the moment it manifested itself.
Therefore, for these reasons the compensation order of the Industrial Relations Commission is reversed and the cause is remanded to them with instructions to reinstate the order of the Judge of Industrial Claims.
It is so ordered.
BOYD, McCAIN and DEKLE, JJ., concur.
ROBERTS, C. J., dissents.